Judge Mills
delivered the opinion of the Court.
This case is precisely similar to tlid case of Fisher vs. Cocheril!, just decided. The dates of the commencement and recovery in ejectment; the appointment of commissioners to assess the value Of improvéments; the return of their report and judgment thereon, under the acts of 1820, are essentially thte same with that case, and for thé same reasons and principles, the appellee is entitled to his judgment under that act, and we should bé bdund to affirm the judgment already rendered, had hot the commissioners assessed one item in their re2 port as a lasting and valuable improvement; which, on the face of the report itself, cannot come within the law under which the assessment was made.
The item alluded to is about $400, for a ferry which he had established on the lands recovered.
Now it is clear that a ferry is not a lasting and valuablé improvement, erected by the labor of the occupant or procured with his money, within the méaning of tile act of 1820.
It is a privilege or a franchise granted by the government, to an individual, on his showing that he is entitled to receive the grant, and complying with the requisites of the law regulating ferries.
Besides, it is a privilege to which the successful claimant cannot succeed as a matter of course, on his evicting the occupant, by the act of eviction. If he enjoys the privilege, he must do so by applying and procuring a grant to himself.
It is a personal trust confided to an individual} which is perhaps not strictly alienable; and if it is, it does not go as of course, by eviction under pro¿ céss of law. The river and the landing are not the production of the occupant’s labor. The highways that lead to it are the acts of the government for thti *141 Vénefit of the public, and the ferry boat, although inade or purchased by the occupant, is not an ap-. pendage to the freehold, and therefore does not come within any law allowing a recovery for improvements.
Mandate for the item of the ferry to be expunged, andjudgment' to be rendered for the balance of the account.
Act of 1820, so far as it varied the measure of the occupant’s claims and mode of recovery, was valid.
This item must thérefórte be stricken from the report, and to reach it the judgment must be reversed, and as it stands separate and is easily taken from the report without affecting the remaining items to which there is no objection, and without again recommitting the report to the same or other commissioners for that purpose, it can be expunged by the court.
But after that is taken from the report, it will he the duty of the court to render judgment for the balance, according to the principles of the case just decided. For the act of 1820, being that under which the appellee first asserted his claim by legal proceedings, he must be permitted to finish it under that act.
In discussing the question mode in thése cases, we may have spoken of the act of 1820 as entirely distinct from that of 1812. Such however, is not the fact. We have pointed outmost of*the differences between them, and we will add another not heretofore mentioned. The act of 1812 permits the successful claimant to stay the recovery against him by giving bond with surety, to pay the same in two equal annual instalments; while that of 1820, directs judgment at once, and cuts off the privilege of staying the recovery. But this we view as a change which the legislature had the right to make and ap* ply to future cases. Indeed, the act of 1820, is only an ámtehdment to that of 1812; and the commissioners áre appointed under the first act, and here the act of Í820 takes up the subject and is only directory to the commissioners what to assess arid allow, ánd to the court, how to render and enforce its judgment on the report. As to the regulation of the claim and what it shall consist of, and how judgment shall be rendered, it was competent for the legislature to regulate that by this act, as it was to legislate on the subject at first; and we again repeat, *142 that further than this, we do not now determine orí the validity of the act, and would not be understood as either approving Or disapproving of the mode pointed out in the act; for enforcing this judgment by the perpetual possession of the occupant, and a right to reimprove, and demand further payment after judgment; because no question of that kind is before us. The right, the ascertaining of it, the enforcing it by judgment, were all secured to the occupant by the act of 1812. The measure .of that claim and the mode of recovery is varied by that of" 1820. These changes we conceive the legislature had the right to make; and that where the occupant had progressed under the faith of an exisitng law ta assert his claim, we cannot suppose that the legislature intended to annul what he had done, and bring his measure of compensation back, to be fixed by a new standard.
The judgment must be reversed with costs, and the cause be remanded with directions to enter jadg meat according to this opinion.